```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - -    X

 4   UNITED STATES OF AMERICA,    :    04cr706

 5                                :

 6
           -against-              :
 7                                     United States Courthouse
                                       Brooklyn, New York
 8   DAMION HARDY, et al,         :

 9                                     February 14, 2006
                Defendants.       :    12:05 p.m.
10
     - - - - - - - - - - - - -    X
11

12                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE DAVID G. TRAGER
13                  UNITED STATES DISTRICT JUDGE

14
     APPEARANCES:
15

16   For the Government:          LORETTA E. LYNCH
                                  United States Attorney
17                                BY: SEAN HARAN
                                  Assistant United States Attorney
18                                271 Cadman Plaza East
                                  Brooklyn, New York
19

20   For the Defendants:          (Appearances noted.)

21
     Court Reporter:              Burton H. Sulzer
22                                225 Cadman Plaza East
                                  Brooklyn, New York
23                                (718) 613-2481
                                  Fax )718 613-2505
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

BHS    OCR    CM    CRR    CSR

2

1         (In open court.)
2         THE CLERK:  If you could state your name, counsel.
3  This is 04 Cr.706, USA v. Damion Hardy, et al..
4         MR. HARAN:  Sean Haran for the government.
5         MR. CELEDONIO: Francisco Celedonio and David Ruhnke
6  for Damion Hardy.
7         THE CLERK:  Eric Moore.
8         MR. BEECHER: Robert Beecher and Carl Herman.
9         THE CLERK: Dwayne Meyers.
10        MR. BRENNER:  Paul Brenner.
11        THE CLERK: James Sessoms.
12        MR. COOPER:  Greg Cooper on behalf of Mr. Sessoms.
13        THE CLERK:  Kenwayne Jones.
14        MS. KELLMAN:  Susan Kellman for the defendant.
15        THE CLERK: Zareh Sarkissian.
16        MR. FISHER:  Ivan Fisher.
17        THE CLERK: James Farrior.
18        MS. SHALLEY:  Margaret Shalley.
19        THE CLERK: Jamont Johnson.
20        MR. MADDEN:  Paul Madden for Mr. Johnson.
21        THE CLERK: Djebara McMillian.
22        MR. KATOWITZ:  Philip Katowitz for Mr. McMillian.
23        THE CLERK: Isheen Campbell.
24        THE DEFENDANT:  Richard Shanley.
25        THE CLERK: Carl Davis.

3

1    MR. SCHOER:  Gary Schoer.
2    THE CLERK:  Abubakr Raheem.
3    MS. STERNHEIM:  Bobbi Sternheim.  Richard Levitt is
4 on trial, your Honor.
5    THE COURT:  All right.
6    MR. HARAN:  At our last status conference there was
7 some discussion about splitting the case into two trials.
8 There are five defendants charged with murders and I think six
9 or seven defendants charged with either kidnapping or drug
10 dealing.
11    I think we have an agreement in principle that
12 because of the time that is likely to take for the death
13 penalty analysis.  Now that there is a competency issue with
14 respect to defendant Eric Moore, it seems reasonable or makes
15 sense that there be two trials.
16    I may let defense counsel speak to scheduling.  We
17 were hopefully in agreement that if there's going to be a
18 first trial as to kidnapping and drug dealing, that it would
19 be -- that I think everyone's available starting in September.
20    Is that accurate?
21    MS. KELLMAN:  I think that was the earliest
22 everybody seemed to be trial free.
23    MR. KATOWITZ:  Which defendants are we speaking
24 about?  I haven't been party to the proposed division.
25    MR. HARAN:  The defendants who are not charged with

```
                                                              4
 1   murder.
 2             THE COURT:  Is your client charged with murder?
 3             MR. KATOWITZ:  No.
 4             MR. MADDEN:  How about September 12th, Judge?
 5             THE COURT:  We can do it starting September 19th or
 6   September 18th.
 7             MS. KELLMAN:  The problem is we have the Jewish
 8   Holidays starting on the 22nd.
 9             THE COURT:  They are Saturday and Sunday this year.
10             MS. KELLMAN:  So that's not a problem.
11             MR. SCHOER:  Did we want to set a motion schedule?
12             THE COURT:  Tell me how long will this trial take.
13             MR. HARAN:  I would think it would not take more
14   than three weeks.
15             THE COURT:  Mark it the week of September 18th.
16   When you say three weeks, including or excluding Fridays?
17             MR. HARAN:  If we don't sit at all on Friday,
18   depending on jury selection, I don't think more than four
19   weeks.  I still think three weeks.
20             THE COURT:  Mark it four weeks.
21             Can we have on the record exactly which defendants
22   we're talking about so there is no confusion in my mind nor my
23   clerk's mind.
24             MR. MADDEN:  Jamont Johnson is in that group.
25             MR. COOPER:  My client, Mr. Sessoms.
```

5

1  THE COURT: Let the government do it.
2  MR. HARAN: Defendant James Sessoms, Kenwayne Jones,
3  James Farrior, Jamont Johnson, Djebara McMillian, Isheen
4  Campbell and Carl Davis.
5  THE COURT: Is that correct?
6  MR. COOPER: Yes, your Honor.
7  THE COURT: All right. Now let's deal with the
8  motion schedule, if there will be any.
9  MR. FISHER: We're just dealing with the motion
10 schedule for the first trial?
11 THE COURT: Right. There will be very little done
12 on the second one until they decide. All right. When do you
13 want to make whatever motions you want to make?
14 MR. HARAN: Just so the parties and the court are
15 aware, in terms of the non-murder charges, there is some
16 discovery with respect to that like photo identifications that
17 I have to send out. Every defendant's post-arrest statement
18 or statements to law enforcement officials have been provided.
19 MR. COOPER: I apologize, but while the government's
20 letter to me said it was, last time we were here I advised
21 Mr. Haran's colleague that I had never gotten it, I was
22 supposed to get it and never did.
23 MR. HARAN: Anytime anyone doesn't have something,
24 just give me a call. People who have called me have found
25 that I provide --

1   MR. COOPER:  I have no problem.  I'm sure if I call
2 Mr. Haran I'll get it.
3   MR. HARAN:  That's it.
4   THE COURT:  If in fact there are going to be
5 hearings on some of these, then I would like to do it before.
6 I can do it a day here and a day there to make my life a lot
7 easier.  So can we say that all motions will be filed by
8 May 1st?
9   MR. COOPER:  Yes.
10   THE COURT:  You'll have everything out so they can
11 make any decisions by then, by the end of March?
12   MR. HARAN:  Yes.
13   THE COURT:  Okay.  The government can reply at the
14 end of May and then I'll read the papers and if I think a
15 hearing is required, I will call you and set a hearing.
16   MR. MADDEN:  I have a request with respect to
17 statements of co-defendants.  If there is any Bruton issue,
18 will we receive those statements of co-defendants at any time?
19   MR. HARAN:  There will be Bruton issues so by March
20 I can send them along.
21   THE COURT:  Why don't you send them out by the end
22 of March and see whether they are going to be serious or be
23 able to work them out by some sort of redaction.
24   Do you have that down, the dates?
25   THE CLERK:  Yes, Judge.

1  THE COURT: All right. Now, anything else with
2  respect to these defendants? If not, then I'll move onto the
3  others.
4  Now, with respect to the death eligible, any idea
5  when you'll have the information?
6  MR. HARAN: The committee in my office is basically
7  ready to make a determination or start considering what the
8  determination will be.
9  I have advised counsel that if they would like to
10 make a written submission to my office, I asked them about a
11 week ago to do it within 30 days. No one has had a problem
12 with it except defendant Eric Moore is currently in North
13 Carolina. He had been shot and there's an issue with respect
14 to his injuries and his competence.
15 MS. STERNHEIM: Your Honor, in regards to
16 Mr. Abubakr Raheem, Mr. Levitt is on trial before Judge
17 Garaufis in a very lengthy trial. For some reason -- and
18 we'll clear this up -- he has not been receiving any of the
19 correspondence.
20 I was able to speak with him the other day and
21 advise him that our submission is requested within 30 days.
22 While we're going to try our very best to do that, because of
23 his schedule it may be difficult for us to come reply within
24 30 days, but we will advise the government how much additional
25 time we may need.

1    THE COURT:  Let me jump ahead a bit.  When should I
2  schedule another status conference on the death eligible
3  cases, late May, early June?
4    MR. RUHNKE:  David Ruhnke.  That is much too early.
5  If the government got its submission down to Washington next
6  week, it will probably be six months before we have a
7  decision.
8    THE COURT:  Do you want to make it September -- I
9  guess we could do it the morning of the trial, or that will be
10  too difficult.  How about having it on Wednesday,
11  September 6th?
12    MR. RUHNKE:  Sounds fine.
13    THE COURT:  Let's say noon because I may be
14  teaching in the morning.
15    MS. KELLMAN:  Do you want to set a status conference
16  after filing the motions for non-death eligible defendants?
17    THE COURT:  That's what I'm talking about.
18    MS. KELLMAN:  I thought you said a status conference
19  for the death eligible.
20    THE COURT:  Yes.
21    MS. KELLMAN:  After motions are filed on the
22  non-death eligible, do you want to set a schedule?
23    THE COURT:  I see what you mean.  Let me finish.
24    MR. HARAN:  September 6th is for the murder,
25  defendants charged with murder?

1       MR. FISHER:  That is the status conference.
2       THE COURT:   At noon.
3       Just for my record here, could I just have the names
4  of the death eligibles right now.
5       MR. HARAN:  Damion Hardy, Eric Moore, Dwayne Meyers,
6  Zareh Sarkissian and Abubakr Raheem.
7       THE COURT:  Is there some reason he's not listed on
8  the sheet here?
9       THE CLERK:  I have it here.
10      THE COURT:  Okay.  I had not planned on having a
11 status on the non-death because I was going to read the
12 papers.  Since most of the people were going to talk about --
13 if there were going to be hearings, it would be on the
14 question of the admissibility and you almost automatically
15 have to have it, but maybe it would be smarter to have one and
16 deal with it in case there are issues on Bruton.
17      Why don't we have it in the beginning of June?
18      MS. KELLMAN:  That sounds good, Judge.
19      THE COURT:   How about Thursday, June 1st?
20      MR. MADDEN:  That sounds fine.
21      MS. KELLMAN:  Fine.
22      THE COURT:   All right.  What time, 11 o'clock?
23      MR. MADDEN:  Fine.
24      MR. KATOWITZ:  Yes, your Honor.
25      THE COURT:   Anything else?

1         (No response.)
2         MR. BEECHER:  Your Honor, there's one minor issue we
3   have to resolve with the government's presence on Mr. Moore,
4   which doesn't involve any of the other defendants.
5         THE COURT:   All right.  I'd ask everyone else to
6   go.
7         Is your client here, Mr. Beecher?
8         MR. BEECHER: He's in Butner.
9         (Defendants leave the courtroom.)
10        MR. BEECHER:  Your Honor, you have before you a
11  subpoena that you signed some months ago regarding records
12  kept at the New York City Police Department, specifically, the
13  Six-O Precinct.  These records involve the shooting in which
14  our client, Mr. Moore, was injured.
15        The PD has refused to comply.  I mentioned it to the
16  government and Mr. Haran has indicated that he's not certain
17  why we need those records, but I would suggest that since it's
18  very possible, and I say it's only possible, that that
19  particular shooting may become the subject of some litigation
20  if he is found competent at trial, it would be prudent to have
21  those records.  It's certainly a no-harm no-foul situation.
22  We have been to the crime scene and we have interviewed
23  witnesses on our own.
24        THE COURT:  Is this where the killing occurred?
25        MR. BEECHER:  This is where Mr. Moore was shot in an

1 elevator at the projects where his wife and daughter live. He
2 was ambushed in an elevator with two other young men, twins.
3 They were killed, he was not. They were innocent victims, but
4 it is that injury which has given rise to the competency
5 issues. So the Police Department has not complied and we --
6       THE COURT: Why should they? What is the relevance?
7       MR. BEECHER: One of the relevant factors is why Mr.
8 Moore was shot because we are of the belief that the
9 government may use that particular shooting as evidence of
10 Mr. Moore's involvement in the central crimes contained in the
11 indictment, the substantive crimes contained in the
12 indictment, and that that shooting was in revenge, was a
13 revenge shooting.
14       THE COURT: So?
15       MR. BEECHER: If we develop evidence to the
16 contrary, that would be significant during our investigation.
17       THE COURT: Excuse me. Is this for the death
18 eligible issue?
19       MR. BEECHER: Well, we're not sure. It could be to
20 both, both to a substantive issue of the actual crimes that
21 he's charged with committing and also --
22       THE COURT: Who was the victim of the revenge?
23       MR. BEECHER: Mr. Moore. Mr. Moore was shot -- he
24 was on his way to visit his daughter at the projects, his wife
25 or his girlfriend. When he got out of the elevator -- when he

1  got out of the elevator, when the elevator opened, an unknown
2  individual or individuals opened fire on the people in the
3  elevator, including Mr. Moore.  Two young men were killed as a
4  result of that assault.
5              THE COURT:  I assume that is the basis of the death
6  eligible or is it totally unrelated?
7              MR. HARAN:  Nothing to do with this case.
8              THE COURT:  Twin brothers were killed?
9              MR. BEECHER:  Yes, Mr. Moore was gravely injured.
10 It was this particular incident that gave rise to our
11 competency issue.
12             THE COURT:  No one is disputing he was shot.  What
13 is the relevance of this?
14             MR. BEECHER:  They have not arrested anybody in that
15 case, but they have interviewed many, many people and I think
16 there are conflicting issues --
17             MR. HARAN:  In what case?
18             MR. BEECHER:  In Mr. Moore's shooting.
19             MR. HARAN:  We have interviewed many, many people?
20             MR. BEECHER:  The Police Department did at the time
21 of the shooting.  They interviewed a lot of people because we
22 also interviewed a lot of people, and it's our information
23 that there may be conflicting reports as to the motive behind
24 the shooting and if that comes up at trial, if there is to be
25 a trial regarding Mr. Moore, if there is a trial we want to be

1  able to be prepared to rebut any evidence that this was a
2  revenge shooting for the crimes that he's charged with
3  committing in the indictment.  The government could fairly --
4             THE COURT:  Why would the government offer that
5  evidence?  I'm having a lot of trouble following you, counsel.
6  I can't imagine that they would want to offer that, maybe you
7  would --
8             MR. BEECHER:  We might.
9             THE COURT:  Having the records that you want, what
10 would that show, find out if it's true?
11            MR. BEECHER:  We have spoken to a large number of
12 people.  There may be people that we have not spoken to that
13 the Police Department has and those DD-5s --
14            THE COURT:  That would establish what?
15            MR. BEECHER:  The motive for the shooting and a
16 possible --
17            THE COURT:  Postulate a motive and tell me how it's
18 relevant.
19            MR. BEECHER:  If the motive for the shooting is
20 revenge for crimes that Mr. Moore allegedly committed on our
21 case, that would be important for us.
22            THE COURT:  How?
23            MR. BEECHER:  If the government is going to
24 introduce that in some fashion at trial --
25            THE COURT:  Why?

1    MR. BEECHER:  We don't know.  Your guess is as good
2 as mine.
3    THE COURT:  At this point I'm not going to order
4 the city to figure out what is relevant.
5    MR. BEECHER:  If we don't have them we don't know if
6 they are relevant.
7    THE COURT:  Or potentially relevant.  I just don't
8 see it.  I can't imagine they would offer it and I don't know
9 why you would want to offer it.
10    It's one thing if you want to offer it as a defense
11 to the shooting, then it was revenge because he attacked some
12 member of his family, I could understand, but I don't
13 understand where we're going with this.
14    All right.  Anything else?
15    MR. BEECHER:  Just one other which doesn't involve
16 the government, your Honor, and it doesn't have to be on the
17 record.
18    THE COURT:  Okay.  What's that all about?
19    MR. BEECHER:  It concerns the conference where we
20 discussed a couple of weeks ago, the death penalty conference
21 which you approved my attendance at.  I actually got a
22 scholarship to go and I would like Mr. Gardener to go as well.
23 They do not have funds.  It's a minimal amount of money, it's
24 like $450.
25    THE COURT:  I approved it for you?

```
 1              MR. BEECHER:  Yes.
 2              THE COURT:  You want to transfer it to him?
 3              MR. BEECHER:  I'd like you to approve it for Mr.
 4   Gardener as well.
 5              THE COURT:  So I'm not going to have to pay for you?
 6              MR. BEECHER:  No, except my time and minimal
 7   expenses and for Mr. Gardener --
 8              THE COURT:  I offered to pay the expenses.  I have
 9   to pay for your training session, too?
10              MR. BEECHER:  I'm paying the -- I said I would pay
11   the cost of transportation, but as to Mr. Gardener, they do
12   not have funds for the investigator component of the
13   conference.  Saturday and Sunday are devoted to investigators
14   only as well as lawyers.  They don't have funds --
15              THE COURT:  I have trouble understanding your.
16              MR. BEECHER:  I always thought I spoke English.
17              THE COURT:  You say you don't need the money.  So I
18   said you can use that money for Mr. Gardener, your
19   investigator.
20              MR. BEECHER:  No, that's where you don't understand
21   me.  I am going to the conference.  I spoke to Margaret
22   O'Donnell the day before yesterday.  They do not have funds to
23   give a scholarship to an investigator, a death investigator as
24   well.  So I'm asking you to give Mr. Gardener permission to
25   attend and his costs will be $450 for the tuition plus the
```

16

1 hotel room for one night and whatever the other expenses he
2 incurs. So I prepared an order for you to give him permission
3 to go. I think it would be useful.
4     THE COURT: I'll the same question again. I don't
5 know why I can't get an answer. What did I allocate for?
6     MR. BEECHER: What you told me was it would not be a
7 problem for me to go and --
8     THE COURT: And I would pay.
9     MR. BEECHER: And that you would pay. Subsequent to
10 that I actually received a scholarship.
11     THE COURT: So the total cost to the government is
12 not going to be any different except possibly an extra hotel
13 room, is that what you're telling me?
14     MR. BEECHER: And the tuition for Mr. Gardener,
15 right.
16     THE COURT: It's not extra. I'm not paying for
17 you.
18     MR. BEECHER: No, but Mr. Gardener is not included
19 in the scholarship so his $450 tuition would have to be paid
20 for. He would pay for it on his own and then seek
21 reimbursement.
22     THE COURT: I hope you're more persuasive with a
23 jury. All I asked you was is the total sum any different. I
24 already agreed if it wasn't I would transfer it; he can go in
25 addition if it wasn't.

17

1    MR. BEECHER: Then I guess he can go?
2    THE COURT: I said that about five minutes ago.
3    MR. BEECHER: Would you like to sign the order i
4 prepared?
5    THE COURT: Why do you need an order?
6    MR. BEECHER: So I can submit it with his voucher?
7    THE COURT: All right.
8    ----------------